IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANNA RUTH BOYL and<br>ROBERT BOYL,<br><br>  Plaintiffs<br><br>  v.<br><br>MERCHANTS DISTRIBUTORS, INC.<br><br>  Defendant | No. 3:04-cv-00487<br>Jarvis/Shirley |

## **MEMORANDUM OPINION**

This diversity action was removed to this court from the Circuit Court for Roane County, Tennessee. Plaintiffs Ann Ruth Boyl and Robert Boyl claim that they were injured by the conduct of defendant's employee, Charles Rose, on February 23, 2004 and March 15, 2004. Currently pending are defendant's motions for summary judgment [Court Files #14, #73]. For the reasons stated in this opinion, the motions will be granted in part and denied in part.

# I.

## *Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiffs.

Defendant Merchants Distributors, Inc. is a wholesale grocery distributor headquartered in Hickory, North Carolina. From February 23, 2004 through March 15, 2004, defendant delivered goods to Russell's Food Town grocery store. Plaintiff Anna Ruth Boyl was an employee of the Russell's Food Town store located on Gateway, Ave., Rockwood, Tennessee during that time.

On February 23, 2004, Charles Rose, who was employed by defendant as a delivery driver, made a scheduled delivery at Russell's Food Town. Plaintiff Anna Ruth Boyl alleges that, during the delivery, Mr. Rose approached her in the break room and laid his head on her shoulder. This contact made her very upset and she immediately told her supervisor, Sherry Renee Gilmore, about the incident. Mrs. Gilmore then contacted Eric Harris, Vice President of Operations for Russell's. Based on plaintiff Anna Boyl's complaints about Mr. Rose, Mr. Harris telephoned defendant and reported the incident to Mr. Dick Millotte, defendant's sales representative to Russell's Food Town.

On March 15, 2004, a second incident occurred, wherein plaintiff Anna Boyl and Mrs. Gilmore encountered Mr. Rose in the Food Town break room. This time, plaintiff alleges that Mr. Rose unbuttoned and dropped his pants to his knees. Moving his genitalia and underpants to one side, he spread his leg to show the two women a bruise in his groin and inner thigh area, which he said had resulted from a recent medical procedure. Mrs. Gilmore has stated that she saw part of Mr. Rose's testicle. Boyl and Gilmore immediately contacted Mr. Harris and Mr. Russell, the store's owner. Mr. Russell and Mr. Harris both contacted Merchants Distributors, Inc. to complain about the incident.

Plaintiffs have presented the deposition of David Burdecki, defendant's director of Loss Prevention and Safety. Mr. Burdecki stated that on December 16, 1999, Mr. Rose was accused of making suggestive remarks to another customer on several occasions, but that the matter was not investigated further by the defendant's employees.

Based on the alleged conduct of Mr. Rose, plaintiff Anna Ruth Boyl has brought this action under a theory of vicarious liability against defendant for assault and battery, as well as intentional infliction of emotional distress. In later

3

Case 3:04-cv-00487   Document 84   Filed 09/08/06   Page 3 of 15   PageID #: 49

amendments, plaintiff also alleges theories of negligent supervision and negligent training.[1]

## II.

### *Summary Judgment Standard*

A motion for summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial*. Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

---

[1]Upon the filing of defendant's motions for summary judgment, plaintiff abandoned theories of intimidation, false imprisonment, and negligent hiring.

4

The court will view all facts presented and make all possible inferences in the light most favorable to the non-moving part. *See, e.g., Hunter v. Bryant*, 502 U.S. 224, 233 (1991); *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Liberty Lobby, Inc.* at 252.

The standard for granting summary judgment mirrors the standard for directed verdict under Federal Rule of Civil Procedure 50(a). *See id.* at 250. That standard is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment should be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5

**III.**

*Tennessee Law of Vicarious Liability*

The doctrine of respondeat superior renders employers vicariously liable for the torts their employees commit while acting within the scope of employment. *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 415 (Tenn. Ct. App. 1988); Restatement (Second) of Agency § 219(1) (1957). To hold an employer liable, the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred. *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 386 (Tenn. 1986); *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liability Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992).

Tennessee courts have turned to the Restatement (Second) of Agency for the analytical framework for deciding whether an employee's conduct is within the scope of his or her employment. *See Tennessee Farmers Mut. Ins. Co.* at 937-38. Restatement (Second) of Agency § 228 (1957) provides: (1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not

unexpectable by the master; (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

In addition, Restatement (Second) of Agency § 229 (1957) states: (1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized. (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered: (a) whether or not the act is one commonly done by such servants; (b) the time, place and purpose of the act; (c) the previous relations between the master and the servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant; (f) whether or not the master has reason to expect that such an act will be done; (g) the similarity in quality of the act done to the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (i) the extent of departure from the normal method of accomplishing an authorized result; and (j) whether or not the act is seriously criminal.

Whether an employee is acting within the scope of employment is generally a question of fact. *Craig v. Gentry*, 792 S.W.2d 77, 80 (Tenn. Ct. App. 1990). However, the court may make this determination as a matter of law where the employee's conduct is clearly beyond the scope of his or her employment. *See Home Stores, Inc. v. Parker,* 166 S.W.2d 619, 622 (Tenn. 1942); *Morris v. Collis Foods, Inc.,* 2002 Tenn. App. LEXIS 441 at *8.

## IV.

### *Tennessee Tort Law*

*Assault and Battery*

Tennessee courts have defined the tort of assault as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, or using actual violence against the person." *Thompson v. Williamson County*, F. Supp. 1026, 1037 (M.D. Tenn. 1997). This definition requires proof of an intentional act creating a reasonable apprehension of imminent physical harm to the plaintiff. *Dowlen v. Matthews*, 2003 Tenn. App. LEXIS 215, at *4 (Mar. 14, 2003).

The tort of battery is defined as "an intentional act that causes an unpermitted, harmful or offensive bodily contact." *Doe v. Pizza*, 2001 Tenn. App. LEXIS 224, at

8

*4 (Apr. 5, 2001); *see also Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989). Determining whether the contact was offensive requires using an objective standard: whether a reasonable person would find the contact offensive. *McKinnie v. Corrections Corp. of America*, 2001 Tenn. App. LEXIS 466, at *12 (June 26, 2001).

*Intentional Infliction of Emotional Distress*

To establish a prima facie case of intentional infliction of emotional distress in Tennessee, the plaintiff must prove: (1) that the conduct complained of is intentional or reckless; (2) that the conduct is so outrageous in character and so extreme in degree as to go beyond all bounds of decency that it is not tolerated by civilized society; and (3) that the conduct results in serious mental injury to the plaintiff. *See Miller v. Willbanks*, 8 S.W.3d 607, 612 (Tenn. 1999); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) Tennessee courts have turned to the Restatement (Second) of Torts, Section 46 Comment d to define the standard for "outrageous." *See Wells*, 936 S.W.2d at 622. Section 46 Comment d states that, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965); *see Wells*, 936 S.W.2d at 622. Under this high standard, "mere

9

insults, indignities, threats, annoyances, petty oppression or other trivialities" are not classified as outrageous. *Dowlen v. Mathews*, 2003 Tenn. App. LEXIS 215, at *8 (Tenn. Ct. App. 2003); *see Wells*, 936 S.W.2d at 622.

## V.

### *Analysis*

*Vicarious Liability*

With respect to plaintiff's claims for assault and battery, the court finds that the plaintiff has offered no evidence which could lead a rational trier of fact to find that defendant Merchants Distributors, Inc. had reason to expect that Charles Rose would either intentionally cause plaintiff to have reasonable apprehension of imminent physical harm or intentionally cause an offensive bodily contact with the plaintiff. Because Mr. Rose's alleged conduct in this regard was not foreseeable to the defendant, such conduct was, as a matter of law, outside the scope of Mr. Rose's employment. *See Tennessee Farmers Mut. Ins. Co. v. American Mut. Liability Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992); Restatement (Second) of Agency § 229(2)(f). As such, defendant may not be held vicariously liable for any assault or battery that may have resulted from Mr. Rose's actions on either February 23 or March 15, 2004.

The plaintiff does not specify from which of the two incidents the alleged assault arose, but in either case defendant had no reason to expect such conduct from Mr. Rose. The plaintiff has not produced any evidence that Mr. Rose had any history of physical violence of which defendant was aware. Nor has the plaintiff produced evidence that Mr. Rose threatened the plaintiff or anyone else, or even behaved in a way that could reasonably be interpreted as threatening imminent physical harm.

If the plaintiff alleges that the assault arose from the February 23 incident, then the 1999 complaint of suggestive comments is the only notice that defendant had that Mr. Rose might act inappropriately. However, the plaintiff does not assert or offer proof that the customer who made that complaint ever stated that he or she had any apprehension of physical harm.

Similarly, if the plaintiff alleges that the assault arose from the March 15 incident, it was still not reasonably foreseeable to the defendant. Again, the 1999 complaint could not form the basis of any reasonable belief that harm at the hands of Mr. Rose was imminent. Furthermore, the February 23 incident provides no evidence that plaintiff Anna Boyl could or did reasonably believe that harm was imminent when Mr. Rose laid his head on her shoulder or at any time during that

11

encounter. Assuming that the February 23 incident was reported to defendant, a report of those events did not make an assault on March 15 reasonably foreseeable.

For the defendant to be held vicariously liable for battery, Mr. Rose's offensive contact with the plaintiff on February 23 must have been foreseeable to the defendant. *See* Restatement (Second) of Agency § 229(2)(f). Because the 1999 complaint mentioned only suggestive comments and not touching, the defendant had no reason to expect that Mr. Rose would intentionally make any sort of contact with the plaintiff. The plaintiff does not allege that Mr. Rose made any physical contact with her during the March 15 incident.

However, a reasonable trier of fact could find that the defendant did have reason to expect Mr. Rose's alleged intentional infliction of emotional distress on March 15. The court finds that there is a question of material fact as to whether the December 16, 1999 report of Mr. Rose's suggestive comments, identified in Mr. Burdecki's deposition, together with the February 23 incident, made subsequent outrageous conduct on the part of Mr. Rose foreseeable to the defendant.

*Negligent Supervision or Training*

Plaintiffs also raise claims of negligent supervision or training of Mr. Rose. Under such theories, no duty on the part of defendant existed unless its employee's acts were foreseeable. *See Smith v. Keyport Self-Storage*, 2000 Tenn. App. LEXIS 301 * at 11-12 (May 5, 2000). Mr. Rose's acts could only be foreseeable to defendant if a reasonable person could foresee the probability of Mr. Rose's actions or if defendant was on notice of the probability of the danger to the plaintiff. *See Doe v. Linder Construction Co., Inc.*, 845 S.W.2d 173, 175 (Tenn. 1992).

The court finds that with respect to the February 23 events, Mr. Rose's actions were not foreseeable as a matter of law. The only event which plaintiff has pointed to which conceivably put the defendant on notice was the December 16, 1999 complaint that Mr. Rose had made suggestive comments to another female. The proximity of that event was simply too attenuated.

However, with respect to the March 15 incident, there was additional evidence which should have put defendant on notice - the complaint from plaintiff's employer about the February 23 event requesting that Mr. Rose not return to plaintiff's place of employment. The combination of these two reports, together with the reports of complaints against other drivers which plaintiff has produced, at least raises

13

questions of material fact with respect to whether the March 15 incident was reasonably foreseeable.

*Intentional Infliction of Emotional Distress*

The court finds that the plaintiff has established a prima facie case of intentional infliction of emotional distress at least with respect to the March 15 event. *Miller v. Willbanks*, 8 S.W.3d 607, 612 (Tenn. 1999). First, it is not disputed that Mr. Rose's conduct was intentional. Second, this court follows the Western District and finds that a determination of whether Mr. Rose's conduct "go[es] beyond all bounds of decency" and is "not tolerated by civilized society" is best left to the trier of fact. *Willbanks*, 8 S.W.3d at 612; *see Scarborough v. Brown Group, Inc.*, 935 F.Supp. 954, 963 (W.D.Tenn.,1995) (finding plaintiff's allegations of defendant making "requests for sexual favors and sexual liaisons, lewd comments, suggestions, and gestures, and verbal abuse in front of co-workers" sufficient to state a claim for outrageous conduct/intentional infliction of emotional distress). Third, the plaintiff has submitted evidence of serious mental injury, for which she has sought counseling.

As stated above, the question of whether the defendant may be held vicariously liable for Mr. Rose's outrageous conduct is a question of fact. It cannot

be properly decided as a matter of law on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c).

## VI.

### *Conclusion*

Accordingly, plaintiffs' motions for summary judgment will be granted in part and denied in part. With respect to the March 15, 2004 event and associated claims of outrageous conduct and negligent supervision and training, the motions will be denied. In all other respects, the motions will be granted.

Order accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE
